## In re BLUE DIAMOND COAL COMPANY, Debtor.

## BLUE DIAMOND COAL COMPANY, Plaintiff,

### v.

**Armand ANGELUCCI, Chairman Member of Workers' Compensation Board Commonwealth of Kentucky, Larry M. Greathouse, Member of the Workers' Compensation Board Commonwealth of Kentucky, William A. Miller, Member of the Workers' Compensation Board Commonwealth of Kentucky, and L.T. Grant, Commissioner Department of Workers' Claims Commonwealth of Kentucky, Defendants.**

Bankruptcy No. 91–32611.
Adv. No. 92–3020.

United States Bankruptcy Court, E.D. Tennessee.

July 23, 1992.

See also 131 B.R. 633.

Arnett, Draper & Hagood, Dan D. Rhea, Hodges, Doughty & Carson, Dean B. Farmer, Knoxville, Tenn., for plaintiff.

Valerie L. Salven, General Counsel, Dept. of Workers' Claims, Frankfort, Ky., for defendants.

## MEMORANDUM ON DEFENDANTS' MOTIONS TO DISMISS

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The court has before it motions filed by the defendants seeking a dismissal of the debtor's Complaint, as amended.[1] All grounds relied upon by the plaintiff in support of its claims against the defendants are now incorporated into a Second Amended Complaint (hereinafter, Complaint) filed June 24, 1992. By its Complaint, the debtor sues L.T. Grant, Commissioner of the Department of Workers' Claims for the Commonwealth of Kentucky, and Armand Angelucci, Larry M. Greathouse, and William A. Miller, the three members of the Workers' Compensation Board for the Commonwealth of Kentucky (the Board). All four defendants are sued in their official capacities. The debtor seeks relief based upon a decision of the Board revoking a Certificate of Self Insurance (Certificate) permitting the debtor to operate as a self insured for purposes of Kentucky's workers' compensation laws.[2]

I

## THE COMPLAINT

The Complaint contains the following averments material to a disposition of the defendants' dismissal motions:[3]

1. The debtor filed a petition commencing its bankruptcy case under Chapter 11 on May 17, 1991.

2. On May 24, 1991, the debtor advised the Commissioner for the Board of

1. The Complaint commencing this adversary proceeding, containing three counts, was filed January 29, 1992. The third count was amended upon motion of the plaintiff pursuant to an order entered April 7, 1992. A fourth count was added by leave of court and incorporated into a Second Amended Complaint filed June 24, 1992. The defendants moved to dismiss Counts I, II, and III of the original Complaint on March 4, 1992. Motions seeking a dismissal of Count III, as amended, and Count IV were filed April 16 and July 8, 1992, respectively.

2. The Certificate, issued by the Board on November 1, 1990, was effective October 1, 1990, through September 30, 1991.

3. These averments are not necessarily set forth in this Memorandum in the numerical sequence stated in the Complaint. Further, the court, in most instances, has stated the substance of the averments rather than provide a verbatim quote.

the commencement of its bankruptcy case.

3. On June 5, 1991, the debtor requested a meeting with the Board to apprise it of the debtor's inability to pay workers' compensation claims and of its willingness to administer those workers' compensation claims filed against it from the proceeds of a $10,600,000 letter of credit with First American National Bank issued in favor of the Board.

4. On June 10, 1991, representatives of the debtor met with the Board and were advised that the Board would take its request under consideration and that a sixty-day notice was required to terminate the Certificate. The Board made no decisions and gave no notice that the June 10, 1991 meeting would be a hearing for the purpose of cancelling the Certificate.

5. Subsequent to the June 10, 1991 meeting, the Board advised the debtor that it considered itself in formal session; that it would not allow the debtor to administer funds drawn against the letter of credit; and that the Certificate would be cancelled.

6. On June 11 and 12, 1991, the debtor terminated approximately 290 union employees engaged in underground coal mine operations at its Slemp, Kentucky, facility. The debtor subsequently rehired 10 employees to conduct necessary above-ground operations, equipment maintenance, and protection, thus providing it with a total work force of 34 employees at this operation.

7. On or about June 14, 1991, an administrative law judge for the Commonwealth of Kentucky advised the debtor that the Board considered the debtor to be self insured and that it would be required to defend workers' compensation claims pending on that date. At this time the debtor had not received any formal notification that its Certificate had been cancelled.

8. On June 17, 1991, the debtor received by certified mail a letter from the Board dated June 10, 1991, post-marked June 13, 1991, stating that the Board had cancelled its Certificate. This letter, signed by the defendant Armand Angelucci, as Chairman of the Board, states in material part:

On June 10, 1991, the Board, at a meeting of the full Board, entered the following Order:

"It is ordered by the Board that the self insurance privileges for Blue Diamond Coal Company be and the same is hereby revoked effective on the 10th day of June, 1991, for the reason a petition in bankruptcy was filed resulting in the cessation of workers claims payments."

9. The action of the Board in terminating the Certificate resulted in the 290 employees who were terminated on June 11 and 12, 1991, having potential claims against the debtor for common law and job related injury and disease which arose while the debtor had no insurance and was not authorized to operate as a self insured under Kentucky's workers' compensation law.

10. The debtor received no notice from the Board that its Certificate was terminated prior to its receipt on June 17, 1991, of the Board's June 10, 1991 letter.

11. The Board presented the letter of credit to First American National Bank on or about June 12, 1991, at which time it obtained payment of the $10,600,000 proceeds of the letter of credit from which it is obligated to pay workers' compensation claims incurred by the debtor while operating as a self insured.

12. The present value of the workers' compensation claim reserve against the debtor on June 30, 1991, approximated $4,700,000. The Board has, therefore, collected a substantial amount in excess of actual workers' compensation claims against the debtor.

13. The $10,600,000 obtained from First American National Bank is in an interest-bearing account with the Commonwealth of Kentucky and subject to the direction and control of the Board.

14. The action of the Board in revoking the Certificate was in direct violation of and contrary to the laws of the Commonwealth of Kentucky, specifically Ky.

Rev.Stat.Ann. § 342.345, which requires sixty (60) days notice and a hearing prior to revocation of a certificate of self insurance.

15. The Board failed to provide any notice of a hearing for the purpose of revoking the Certificate, failed to provide a hearing, and failed to obtain relief from the automatic stay imposed under Bankruptcy Code § 362.

16. The statutes of the Commonwealth of Kentucky provide for an assigned risk pool by which all employers are able to obtain workers' compensation insurance. The action of the Board in canceling the Certificate without providing notice to the debtor circumvented the intent of the statutes to allow an employer to obtain workers' compensation insurance coverage and provide insurance coverage for workers and avoid any liability of the employer for failure to have such insurance. The debtor obtained workers' compensation insurance for its employees through the assigned risk pool effective June 19, 1991.

17. To the extent the workers' compensation claims against the debtor are not paid, the Uninsured Employers' Fund under the statutes of the Commonwealth of Kentucky, Ky.Rev.Stat.Ann. § 342.-760, *et seq.*, will pay such claims. These statutes provide a statutory and common law right of subrogation against the debtor for all payment of workers' compensation claims. The Board intentionally created the insurance gap in order to increase the debtor's liability to the Commonwealth of Kentucky and reduce potential claims of the debtor's former employees against the $10,600,000 fund held by the Board.

The debtor premises its entitlement to relief under the Complaint on four counts. Count I is grounded upon the debtor's contention that the Board's action in revoking the Certificate was discriminatory and thus violative of Bankruptcy Code § 525(a) (11

U.S.C.A. § 525(a) (West Supp.1992)). In Count II, the debtor avers that the Board, by revoking the Certificate, violated the automatic stay imposed upon it under Bankruptcy Code § 362(a) (11 U.S.C.A. § 362(a) (West 1979 & Supp.1992)). In Count III, the debtor avers that it was denied due process by the Board in that it was deprived of a property right, the Certificate, without prior notice and a hearing, and without the availability of any post-deprivation hearing procedure. The debtor also contends in Count III that it is entitled to maintain an action for deprivation of rights under 42 U.S.C.A. § 1983 (West 1981).[4] In Count IV, the debtor seeks to avoid the Board's revocation of the Certificate as a post-petition transfer of property of the estate under Bankruptcy Code § 549 (11 U.S.C.A. § 549 (West Supp.1992)).

At pages 10 and 11 of its Complaint, the debtor prays for the following relief:

1. An injunction directing the defendants to reinstate the Debtor's Certificate of Self Insurance through its normal period of expiration.

2. That a permanent injunction be entered preventing the Board from canceling or otherwise terminating the Debtor's self insured status prior to normal expiration of that status being September 1, 1991.[5]

3. That the Court declare the rights of the parties, specifically declaring the Board's actions to be violative of Debtor's right to due process of law under the 14th Amendment of the United States Constitution and therefore null and void.

4. That funds drawn by the Board pursuant to the letter of credit, in excess of the present value of the workers' compensation claims, be ordered returned to the Debtor, and that the Board be required to petition this Court and present an accounting prior to the Debtor being required to further fund any claims.[6]

5. That the Board be enjoined from refusing to fully administer, defend, and pay workers' compensation claims for all

---

4. *See infra* n. 7.

5. The Certificate evidences an expiration date of September 30, 1991.

6. Although it does not expressly cite the statute, the debtor, through this prayer for relief, is clearly relying upon Bankruptcy Code § 542 which provides in material part:

employees of the Debtor who were employed prior to June 19, 1991.

6. That the Board be enjoined, as a result of its willful and malicious activity in violation of the automatic stay and the anti-discrimination provisions of the Bankruptcy Code, from using funds obtained from the Debtor's letter of credit for expenses and costs, including attorney fees and administrative costs, and that the funds remaining with the Board (approximately $4.7 million) be used solely and exclusively for the payment of workers' compensation claims and not for administrative expense or overhead, and to further account to this Court for the use of such funds.

7. That the plaintiff be granted such further and general relief as may be warranted by the Complaint.

8. That the revocation of the debtor's Certificate of Self Insurance be avoided as a voidable transfer pursuant to 11 U.S.C. Section 549 and that the debtor be reinstated with its status as self insured through the terms of the Certificate of Self Insurance through September 30, 1991.

## II

## THE MOTIONS TO DISMISS

### COUNT I

### DISCRIMINATION

■ The defendants contend that Count I of the Complaint, alleging a violation of Bankruptcy Code § 525(a), fails to state a claim upon which relief may be granted and should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6), incorporated into Fed. R.Bankr.P. 7012.

Dismissal is proper under Fed.R.Civ.P. 12(b)(6) only "when it is established beyond a doubt that the plaintiff cannot prove any set of facts consistent with the allegations that would entitle such plaintiff to relief." *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Bankruptcy Code § 525(a) provides in material part:

Protection against discriminatory treatment.

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C.A. § 525(a) (West Supp.1992).

The defendants, relying upon *Will Rogers Jockey & Polo Club, Inc. v. Oklahoma Horse Racing Commission (In re Will Rogers Jockey & Polo Club)*, 111 B.R. 948 (Bankr.N.D.Okla.1990) and *Christmas v. Maryland Racing Commission (In re Christmas)*, 102 B.R. 447 (Bankr.D.Md. 1989), contend that the provisions of Code § 525(a) do not relieve the debtor from

**Turnover of property to the estate.**
(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. 11 U.S.C.A. § 542 (West 1979).

complying with the state financial responsibility requirements imposed upon all self-insured employers in Kentucky, notwithstanding the commencement of a bankruptcy case. The defendants maintain that the Certificate was revoked, not because of the debtor's bankruptcy filing, but rather, as is stated in the Board's June 10, 1991 letter, "for the reason a petition in bankruptcy was filed resulting in the cessation of workers' claims payments."

The defendants argument is based on assertions of fact which conflict with the facts alleged in the Complaint. In deciding whether to grant a motion to dismiss based on Fed.R.Civ.P. 12(b)(6), the court must accept the facts as alleged by the plaintiff to be true. *Collins*, 892 F.2d at 493. Accepting the defendants' legal argument that the debtor is required to comply with Kentucky's financial responsibility provisions in order to maintain its self-insured status notwithstanding its pending bankruptcy case, the debtor has nonetheless alleged sufficient facts to maintain its cause of action. The debtor alleges that the Board revoked the Certificate solely because it filed a bankruptcy petition or was insolvent before or during the case. Because such action may constitute a violation of Code § 525(a), the debtor has alleged sufficient facts to maintain its cause of action under Count I. Therefore, dismissal of Count I pursuant to Fed.R.Civ.P. 12(b)(6) is inappropriate.

It should be noted that, in an ultimate determination of the merits of the debtor's claim under Count I, this court cannot review the question of whether the Board properly applied Kentucky law in its decision to revoke the Certificate. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Rather, the court will determine whether the Board's actions, in general, violated Code § 525(a). *See In re Rath Packing Co.*, 35 B.R. 615 (Bankr.N.D.Iowa 1983).

## COUNT II
### VIOLATION OF THE AUTOMATIC STAY

The debtor contends in Count II of its Complaint that the Board's revocation of the Certificate violated the automatic stay provisions of Bankruptcy Code § 362(a).

Rather than dispute the debtor's allegation that the revocation of the Certificate violated the automatic stay, the defendants contend that the bankruptcy court lacks subject matter jurisdiction over all issues concerning the letter of credit. The defendants argue that the letter of credit was not property of the bankruptcy estate, and that any action taken in obtaining the proceeds of the letter of credit could not be a violation of the automatic stay.

The defendants' argument is misplaced. The debtor does not allege that the Board's realization of the proceeds of the letter of credit violated the automatic stay. The debtor contends, rather, that revocation of the Certificate violated the automatic stay. In *Rath*, 35 B.R. at 620–21, such an action was held to be violative of Code § 362(a)(1), which provides in material part:

[A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C.A. § 362(a) (West Supp.1992).

Because the debtor alleges sufficient facts to support a cause of action for violation of Code § 362(a)(1), dismissal is inappropriate as to Count II of the Complaint.

## COUNT III
### DENIAL OF DUE PROCESS
#### A. SUBJECT MATTER JURISDICTION

The defendants contend that this court lacks jurisdiction to hear Count III of the Complaint. In Count III, the debtor alleges the Board's actions violated the Due Process Clause of the Fourteenth

Amendment by depriving it of a property right, the Certificate, without prior notice and hearing, and that the Commonwealth of Kentucky provides no post-deprivation hearing procedure. Count III also alleges that the actions of the Board violated 42 U.S.C.A. § 1983 (West 1981).[7]

The defendants contend that this court is barred by the Eleventh Amendment from exercising jurisdiction over the debtor's claim that the Board exceeded its statutory authority under Kentucky law. Again, the defendants' argument is misplaced. It is true that this court lacks jurisdiction to determine whether the Board exceeded its state statutory authority. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). However, the debtor alleges more than a mere violation of the relevant Kentucky statutes. The debtor alleges that the defendant state officials violated 42 U.S.C.A. § 1983 (West 1981) in that they deprived the debtor of a property right without notice and a hearing, in violation of the Due Process Clause of the Fourteenth Amendment.

As the Supreme Court noted in *Pennhurst*, an exception to the Eleventh Amendment exists: "a suit challenging the constitutionality of a state official's action is not one against the State." 465 U.S. at 102, 104 S.Ct. at 909 (*citing Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). In *Young*, the Supreme Court held that an unconstitutional enactment is "void" and, therefore, does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." 209 U.S. at 160, 28 S.Ct. at 454. Because the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected to the consequences of his individual conduct." *Id.* The Supreme Court, in *Pennhurst*, construed *Young* to hold that unconstitutional *acts*, as well as enactments, are void. Because the debtor alleges that the defendants' actions were unconstitutional, the suit is not one against the state and, thus, is not barred by the Eleventh Amendment.[8] Therefore, the bankruptcy court has jurisdiction to consider the merits of Count III within the context of its jurisdictional grant under 28 U.S.C.A. §§ 1334(b) and 157(b) or (c) (West Supp.1992).

### B. POST–DEPRIVATION STATE REMEDIES

 The defendants also contend that, even if their actions were improper, the availability of adequate state-law remedies frustrates the debtor's ability to maintain an action alleging that the Board violated its right to due process. In other words, the defendants argue that the existence of adequate state-law remedies provided the due process to which the debtor is entitled under the Fourteenth Amendment. *See Parrat v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Macene v. MJW, Inc.*, 951 F.2d 700 (6th Cir.1991).[9]

---

**7.** Section 1983 provides in material part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983 (West 1981).

**8.** However, in *Pennhurst* the Supreme Court goes on to say that the theory of *Young* "has not been provided an expansive interpretation." 465 U.S. at 102, 104 S.Ct. at 909. In *Edelman v.*

*Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the court held that in suits against state officials alleging violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. Because the debtor's § 1983 action will be dismissed, as discussed hereafter, the court need not consider whether the relief sought by the debtor constitutes retroactive monetary relief.

**9.** The requirement that a plaintiff seeking to state a claim under 42 U.S.C.A. § 1983 (West 1981) for deprivation of property without procedural due process must plead and prove that post-deprivation state-law remedies are inadequate should not be confused with the requirement of exhaustion of state administrative remedies. In a § 1983 case such as this one, exhaustion of administrative remedies is not a requirement, *Hammond v. Baldwin*, 866 F.2d

*Parrat* involved a case out of Nebraska in which the inmate of a state prison, whose mail order hobby materials were lost when normal procedure for receipt of mail packages was not followed, filed suit under 42 U.S.C.A. § 1983 (West 1981) against prison officials to recover their value. The Supreme Court held that although the inmate had been deprived of property under color of state law, he had not sufficiently alleged a violation of the Due Process Clause of the Fourteenth Amendment because the state of Nebraska had an established tort claims procedure, which he failed to utilize, through which the State could hear and pay claims of prisoners housed in its penal institutions. 451 U.S. at 543, 101 S.Ct. at 1917. The rationale behind the Court's conclusion that state law remedies providing a means of redress for property deprivations satisfies the requirements of procedural due process is stated as follows:

> To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

*Id.*

■ The Sixth Circuit has explained the distinction between deprivations of proper-

ty pursuant to established state procedures and those resulting from a "random and unauthorized act" by state officials. *Macene* at 705; *Watts v. Burkhart*, 854 F.2d 839, 843 (6th Cir.1988); *Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir.1983). When an established state procedure is challenged, there is no need to plead a lack of adequate state remedies. However, when a random and unauthorized act of state officials is challenged, the plaintiff must plead and prove that no adequate state remedies existed. The rationale is that, in the latter case, the state action is not necessarily complete. *Vicory* at 1064 (*citing Parrat* 451 U.S. at 542, 101 S.Ct. at 1916). Further, "[i]n cases involving 'random and unauthorized' deprivations of property such as *Parrat* ... pre-deprivation process is impossible and, therefore, adequate post-deprivation state procedures comport with the constitutional requirements of due process." *Macene* at 706 (citations omitted).

The procedure established by Kentucky regarding revocation of Certificates of Self Insurance is set forth by statute:

> Whenever an employer has complied with the provisions of KRS 342.340 relating to self insurance, the board shall issue to such employer a certificate which shall remain in force for a period fixed by the board. But the board may, upon at least sixty (60) days' notice and a hearing to the employer, revoke the certificate upon satisfactory evidence for such revocation having been presented....

Ky.Rev.Stat.Ann. § 342.345.

Section 342.345 compels 60 days notice and a hearing as a prerequisite to the Board's revocation of a certificate of self insurance. The defendants, however, allegedly ignored these mandatory procedures and revoked the debtor's Certificate without notice or any official hearing. Under the analysis required by *Parrat* and its Sixth Circuit progeny, such actions would be considered random and unauthorized. Consequently, in order to maintain its claim under 42 U.S.C.A. § 1983 (West 1981), the debtor must establish the unavailability of adequate post-deprivation state remedies.

172 (6th Cir.1989); inadequacy of post-deprivation state-law remedies is. *Vicory v. Walton*, 721 F.2d 1062, 1064 n. 3 (6th Cir.1983), *cert.*

*denied* 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984).

The parties dispute whether adequate state remedies were available to the debtor. The debtor contends that the only right to appeal is statutory, and that the applicable statutes, Ky.Rev.Stat.Ann. §§ 342.285 and 342.290, allow judicial review only from decisions by the Board on appeals from administrative law judges concerning claims for benefits.[10] Further, the debtor argues that Kentucky's Declaratory Judgment Act, Ky.Rev.Stat.Ann. § 418.005, would not provide relief because Kentucky courts may hear cases brought under the act at their discretion and a Kentucky court would not hear the action in light of the Board's exclusive jurisdiction over all workers' compensation matters.

The debtor's assertion that judicial review at the state level is unavailable would be correct if the controversy involved the merits of the Board's decision to revoke the Certificate. However, the dispute in this case involves the manner in which the Board arrived at its decision. There is no doubt that a Kentucky court would hear the debtor's claim challenging the procedure (or the alleged lack of procedure) followed by the Board in its decision.

 Under Kentucky law, agencies, such as the Workers' Compensation Board, are creatures of statute "and as such the statute must warrant any exercise of authority which they claim." *Curtis v. Belden Electronic Wire and Cable,* 760 S.W.2d 97, 99 (Ky.Ct.App.1988); *see also Kerr v. Kentucky State Board of Registration for Professional Engineers and Land Surveyors,* 797 S.W.2d 714, 717 (Ky. Ct.App.1990). When an agency's actions exceed its statutory authority, those acts are deemed null and void. *Id.* at 717. Judicial relief, as distinguished from the administrative appeal process, is always available to directly attack a void administrative order. *Kentucky Board of Hairdressers and Cosmetologists v. Stevens,* 393 S.W.2d 886, 888 (Ky.Ct.App.1965); *Goodwin v. City of Louisville,* 309 Ky. 11, 215 S.W.2d 557, 559 (App.1948). This is true even though remedies under the statutory administrative process are regarded to be exclusive when the case is within their purview. *See id.*

In the instant case, the debtor alleges that the defendants, in their official capacities, exceeded their statutory authority by revoking its Certificate without notice and a hearing. That allegation is, in essence, an allegation that the Board's action is void. Therefore, judicial relief would have

---

**10.** Ky.Rev.Stat.Ann. § 342.285 provides:

(1) An award or order of the administrative law judge as provided in KRS 342.275, if petition for reconsideration is not filed as provided for in KRS 342.281, shall be conclusive and binding as to all questions of fact, but either party may in accordance with administrative regulations promulgated by the board appeal to the workers' compensation board for the review of such order or award.

(2) No new or additional evidence may be introduced before the board except as to the fraud or misconduct of some person engaged in the administration of this chapter and affecting the order, ruling or award, but the board shall otherwise hear the appeal upon the record as certified by the administrative law judge and shall dispose of the appeal in summary manner. The board shall not substitute its judgment for that of the administrative law judge as to the weight of evidence on questions of fact, its review being limited to determining whether or not:

(a) The administrative law judge acted without or in excess of his powers;

(b) The order, decision, or award was procured by fraud;

(c) The order, decision, or award is not in conformity to the provisions of this chapter;

(d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record; or

(e) The order, decision, or award is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(3) Within thirty (30) days from final submission, the board shall enter its decision affirming, modifying or setting aside the order, decision or award, or in its discretion remanding the claim to the administrative law judge for further proceedings in conformity with the direction of the board. The board may, before decision and upon a sufficient showing of fact, remand the claim to the administrative law judge.

Ky.Rev.Stat.Ann. § 342.290 provides:

The decision of the board shall be subject to review by the Court of Appeals pursuant to Section 111 of the Kentucky Constitution and rules adopted by the Supreme Court. The scope of review by the Court of Appeals shall include all matters subject to review by the board and also errors of law arising before the board and made reviewable by the rules of the Supreme Court for review of decisions of an administrative agency.

been available in a Kentucky court. Because adequate post-deprivation state remedies were available upon the Board's revocation of its Certificate, the debtor was afforded the protection to which it is entitled under the Due Process Clause of the Fourteenth Amendment. The debtor may not now maintain an action based on 42 U.S.C.A. § 1983 (West 1981). Count III of the Complaint will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## COUNT IV

### AVOIDANCE OF POST–PETITION TRANSFER

The debtor contends in Count IV of its Complaint that the Board's revocation of its Certificate constituted a post-petition transfer under Bankruptcy Code § 549, which provides in material part:

**Postpetition transactions.**

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate —

(1) that occurs after the commencement of the case; and

. . . .

(2)(B) that is not authorized under this title or by the court.

11 U.S.C.A. § 549 (West Supp.1992).

In seeking a dismissal of Count IV, the defendants merely repeat arguments asserted in opposition to Counts I and II of the Complaint. The defendants neither dispute that the Certificate was property of the estate nor contend that its revocation was authorized under the Bankruptcy Code or by this court.

The filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1979 & Supp. 1992). Clearly, the Certificate was property of the debtor's bankruptcy estate. *See*

*In re Draughon Training Institute,* 119 B.R. 927, 930–31 (Bankr.W.D.La.1990) (United States Department of Education certification of debtor's eligibility to participate in federal educational funding programs is property of the estate). A certificate of self insurance issued by a state agency is, by analogy, property of the estate.

The alleged revocation of the Certificate constituted a transfer of property of the estate.[11] There is no section of the Bankruptcy Code that would have allowed the revocation. Further, the Board never requested, nor did this court authorize, the revocation.

Because the debtor has alleged sufficient facts to support a cause of action under Bankruptcy Code § 549, dismissal of Count IV pursuant to Fed.R.Civ.P. 12(b)(6) is inappropriate.

## III

### ABSTENTION

The defendants urge the court to abstain from hearing this adversary proceeding pursuant to 28 U.S.C.A. § 1334(c)(2) (West Supp.1992), which provides:

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain or not to abstain made under this subsection is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under 1254 of this title. This sub-

---

**11.** "Transfer" is defined under the Bankruptcy Code as meaning "every mode, direct or indirect, absolute or conditional, voluntary or invol-

untary, of disposing of or parting with an interest in property...." 11 U.S.C.A. § 101(54)[58] (West Supp.1992).

section shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

28 U.S.C.A. § 1334(c)(2) (West Supp.1992).

It is not clear whether the defendant's argument is directed only toward the debtor's claim under 42 U.S.C.A. § 1983 (West 1981) or the entire Complaint. However, upon dismissal of the § 1983 claim, the relief sought under the three remaining counts is grounded exclusively upon statutes enacted within the provisions of title 11, i.e., 11 U.S.C.A. §§ 362, 525, 542,[12] and 549 (West 1979 & Supp.1992). Because these claims arise under title 11 and are thus core proceedings under 28 U.S.C.A. § 157(b)(2) (West Supp.1992), the mandatory abstention provisions of 28 U.S.C.A. § 1334(c)(2) (West Supp.1992) are inapplicable.[13]

## IV

### COUNTS I, II, and IV ELEVENTH AMENDMENT

■ The court has discussed in some depth the defendants' argument that Count III of the Complaint should be dismissed as barred by the Eleventh Amendment. Notwithstanding that Count III will be dismissed on other grounds, the court, on the strength of the Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman*, concluded that Count III is grounded upon the debtor's challenge to the constitutionality of the actions of the individual defendants in revoking the Certificate, and that Count III, accordingly, does not constitute an action against the Commonwealth of Kentucky. Therefore, there is no Eleventh Amendment bar to the debtor's claim under Count III. This same analogy does not have application, however, to Counts I, II, and IV.

The scope of relief to which the debtor may be entitled should it successfully prosecute Counts I, II, and IV of its Complaint is limited by the extent to which Congress in Bankruptcy Code § 106 has abrogated or waived the States' Eleventh Amendment immunity from actions under §§ 362, 525(a), 542(a), and 549 of the Bankruptcy Code.[14] Code § 106 provides:

**Waiver of sovereign immunity.**

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units;[15] and

12. *See supra* n. 6.

13. The court discussed the distinction between core and noncore proceedings in a recent decision, *Pioneer Inv. Serv. Co. v. The Cain Partnership, Ltd. (In re Pioneer Inv. Serv. Co.)*, 141 B.R. 635 (Bankr.E.D.Tenn.1992). The court adopts but will not reiterate its analysis in *Pioneer* for purposes of this Memorandum.

14. Notwithstanding that the Complaint in this adversary proceeding was filed against four state officials, the action nonetheless constitutes a suit against the Commonwealth of Kentucky. *Pennhurst*, 465 U.S. at 101, 104 S.Ct. at 908.

15. The terms "creditor", "entity", and "governmental unit" are defined in the Bankruptcy Code in material part as follows:
(10) "creditor" means—
(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
. . . .
(15) "entity" includes person, estate, trust, governmental unit, and United States trustee;
. . . .
(27) "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C.A. § 106 (West 1979).

Although not established by the record before it, the court takes judicial notice of the fact that the Commonwealth of Kentucky timely filed proofs of claim in the debtor's bankruptcy case on June 12 and September 25, 1991. Fed.R.Evid. 201. The first claim, filed by the Division of Collections, Revenue Cabinet, is in the amount of $137,628.27 and is for various taxes owed by the debtor. This claim, as amended August 12 and November 7, 1991, and February 6 and May 7, 1992, now stands at $488,202.29. The second claim, filed by the Division of Unemployment Insurance, Department for Employment Services, is in the amount of $3,601.85, and is for unemployment insurance owed by the debtor.

Clearly, § 106(a) does not provide a basis for the debtor's actions in this adversary proceeding, since the debtor's claims against the Board do not arise out of the same transaction or occurrence out of which the claims filed by the Commonwealth of Kentucky arose. It appears, however, that § 106(b) and (c) do provide a basis for the relief claimed by the debtor under Counts I, II, and IV, at least to a limited extent.

The Supreme Court recently confronted the issue of whether § 106(c) authorizes a bankruptcy court to issue a money judgment in a turnover proceeding initiated by the trustee against a state that had not filed a proof of claim. In its discussion of § 106 generally, the Court stated in material part:

> The language of § 106(a) carefully limits the waiver of sovereign immunity under that provision, requiring that the claim against the governmental unit arise out of the same transaction or occurrence as the governmental unit's claim. Subsec-

States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government[.]

tion (b) likewise provides for a narrow waiver of sovereign immunity, with the amount of the offset limited to the value of the governmental unit's allowed claim....

> We believe that § 106(c)(2) operates as a ... limitation on the applicability of § 106(c), narrowing the type of relief to which the section applies. Section 106(c)(2) is joined with subsection (c)(1) by the conjunction "and." It provides that a "determination" by the bankruptcy court of an "issue" "binds governmental units." This language differs significantly from the wording of §§ 106(a) and (b), both of which use the word "claim," defined in the Bankruptcy Code as including a "right to payment." Nothing in § 106(c) provides a similar express authorization for monetary recovery from the States.

> The language of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery.... *We therefore construe § 106(c) as not authorizing monetary recovery from the States.* Under this construction of § 106(c), a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes ... but would not be subjected to monetary recovery.

*Hoffman v. Conn. Dept. of Income Maintenance*, 492 U.S. 96, 102, 109 S.Ct. 2818, 2822–23, 106 L.Ed.2d 76 (1989) (emphasis added).

In sum, the Court found that while subsections (a) and (b) of § 106 waived sovereign immunity with regard to · monetary relief for compulsory counterclaims to government claims (subsection (a)) and permissive counterclaims to government claims capped by a setoff limitation (subsection (b)), § 106(c) is limited to permit a bankruptcy court to issue declaratory and injunctive relief, but not monetary relief, against the government.

11 U.S.C.A. § 101(10), (15), and (27) (West Supp.1992).

Based upon the authority of *Hoffman*, the relief to which the debtor will be entitled in the event it prevails under Counts I, II, and IV of its Complaint will be limited by the extent the Eleventh Amendment immunity of the Commonwealth of Kentucky has been waived or abrogated under Code § 106(b) and (c). Thus, if the debtor prevails on its claim that the Board should be required to turnover a portion of the $10,600,000 proceeds of the letter of credit, its recovery in the bankruptcy court is limited by § 106(b) to its right of offset against the amount of the claims filed by Commonwealth of Kentucky in the debtor's bankruptcy case, $491,804.14.

## V

### CONCLUSION

For the reasons set forth herein, the respective motions to dismiss filed by the defendant will be granted as to Count III of the Complaint and denied as to Counts I, II and IV. An appropriate order will be entered.